2004 WY 85

**Ronald "Pete" LLOYD, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY and COMPENSATION DIVISION, Appellee (Respondent).**

No. 03–149.

Supreme Court of Wyoming.

July 16, 2004.

Representing Appellant:  R. Michael Shickich of Law Offices of R. Michael Shickich, LLC, Casper, WY.  Argument by Mr. Shickich.

Representing Appellee:  Patrick J. Crank, Wyoming Attorney General;  Steven R. Czoschke, Senior Assistant Attorney General;  and Kristi M. Radosevich, Assistant Attorney General.  Argument by Ms. Radosevich.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1]  This is an appeal from the denial of the worker's compensation benefits claim made by appellant Ronald "Pete" Lloyd (Lloyd).  Lloyd's claim was denied based on the conclusion that Lloyd was acting outside the scope of his employment when the accident occurred.  We reverse.

### ISSUES

[¶ 2]  Lloyd sets forth the following issues:

(1) Whether the Office of Administrative Hearings erred when it failed to apply the Wyoming "nexus" test.

(2) Whether the Office of Administrative Hearings erred when it failed to apply the "special mission" doctrine.

(3) Whether the Office of Administrative Hearings erred when it failed to apply the "dual-purpose" doctrine.

The State phrases the issues as:

I. Whether the hearing examiner properly applied Wyo. Stat. § 27–14–102(a)(xi)(D) as a clear and unambiguous statute to determine that Appellant's injuries occurred outside the scope of his employment for purposes of worker's compensation coverage, due to Appellant's accident while traveling to his home in his personal vehicle without reimbursement.

II. Whether the hearing examiner's decision to deny medical and temporary total disability benefits to Appellant was supported by substantial evidence.

## FACTS

[¶ 3] Sage Technical Services (Sage) operates a truck driving school with locations in Colorado, Idaho, Montana, Utah, and Wyoming. Sage employed Lloyd as a driving instructor in Casper, Wyoming, and Lloyd was later promoted to the position of lead instructor. As lead instructor, Lloyd was not only required to teach Sage students, but also ensure that the trucks and trailers used by Sage were safely maintained and operated.

[¶ 4] Sage found that as a part of its normal operations it was occasionally necessary to move trucks and trailers from one Sage location to another. From time to time, Sage asked Lloyd to assist in transporting these trucks and trailers. In fact, Lloyd believed that part of his responsibilities as lead instructor included assisting with the transport of Sage's trucks and trailers from one location to another.

[¶ 5] In February of 2002, Sage needed a truck transferred from its Casper location to its Billings, Montana location. Lloyd indicated that he would deliver the truck if the drop-off location could be changed from Sheridan, Wyoming to Frannie, Wyoming because Lloyd needed to retrieve his personal vehicle in Cody, Wyoming. After consider-

ing other options, Sage approved Lloyd's delivery of the truck on these terms. At the time of this approval, Lloyd understood that, pursuant to established Sage policy, he would be reimbursed for mileage concerning his return trip in his personal vehicle.

[¶ 6] On the morning of February 9, 2002, Lloyd delivered the truck in Frannie and was directly transported by a friend from Frannie to Cody. After picking up his personal vehicle, Lloyd immediately returned to Frannie to check on the security of Sage's truck. After making sure that Sage's truck was secure, Lloyd at once commenced his return trip retracing the route that he had taken from Casper. Lloyd was then injured in a single car accident when he fell asleep at the wheel.

[¶ 7] Because Lloyd was incapacitated due to injuries sustained in the accident, Lloyd's supervisor advised that he would complete the necessary reimbursement documentation for Lloyd concerning his trip. However, upon the supervisor's inquiry to Sage's main office, he was advised that Sage had determined that Lloyd would not be reimbursed for his return trip made in his personal vehicle. Lloyd then submitted a timely request for worker's compensation benefits. This request was denied by the State.

[¶ 8] After a hearing before the Office of Administrative Hearings (OAH), OAH affirmed the denial of benefits. Subsequently, upon filing a petition for review, the district court affirmed the decision of the OAH. This appeal followed.

## STANDARD OF REVIEW

[¶ 9] We recently stated the applicable standard of review in *Ludwig v. State ex rel. Workers' Safety and Compensation Div.*, 2004 WY 34, ¶¶ 5–7, 86 P.3d 875, ¶¶ 5–7 (Wyo.2004) (footnote in original):

The parameters for judicial review of an agency action are found in Wyo. Stat. Ann. § 16–3–114.[1] *Serda v. State ex rel. Work-*

---

1. Wyo. Stat. § 16–3–114(c) (LexisNexis 2003):
   (c) To the extent necessary to make a decision and when presented, the reviewing court shall

decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the

ers' Safety and Compensation Div., 2002 WY 38, ¶ 18, 42 P.3d 466, ¶ 18 (Wyo.2002). Our standard of review when reviewing administrative agency action was clarified and refined in the case of *Newman v. State ex rel. Workers' Safety and Compensation Div.*, 2002 WY 91, 49 P.3d 163 (Wyo.2002). That case held that "the substantial evidence test is the appropriate standard of review ... when factual findings are involved and both parties submit evidence." *Newman*, at ¶ 22.

In appeals where both parties submitted evidence at the hearing below and the dispute is over the soundness of the factual findings of the agency, *Newman* mandates the appellate review be limited to application of the substantial evidence test. *Id.* This is true regardless of which party appeals from the agency decision. The substantial evidence test provides:

> In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Newman*, at ¶ 12 (quoting *State ex rel. Workers' Safety and Compensation Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)). This court is required to review the entire record in making its ultimate determination on appeal. *Newman*, at ¶¶ 19 and 24–26.

In *State ex rel. Workers' Safety and Compensation Div. v. Garl*, 2001 WY 59, ¶ 9, 26 P.3d 1029, ¶ 9 (Wyo.2001), we acknowledged that:

> The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. *Collicott [v. State ex rel. Workers' Safety and Compensation Div.*, 2001 WY 35], at ¶ 4[, 20 P.3d 1077, ¶ 4 (Wyo.2001) ]. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. *Id.* We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Id.*

*In accord see Vaughan v. State ex rel. Workers' Compensation Div.*, 2002 WY 131, ¶ 6, 53 P.3d 559, ¶ 6 (Wyo.2002).

### DISCUSSION

[¶ 10] Lloyd mounts three separate arguments that he is entitled to worker's compensation benefits. He first contends that an exception to the "coming and going" rule, recognized in common law and codified in 1986 within Wyo. Stat. Ann. § 27–14–102(a)(xi)(D), exists when there is a link between the employee's activities and a benefit to the employer. Hence, Lloyd argues that under this "nexus test," worker's compensation benefits must be provided to the employee. Next, Lloyd asserts that another exception to the "coming and going" rule, known as the "special mission" or "special errand" doctrine, is applicable. Under this exception, when an employee undertakes activities at the request of the employer, worker's com-

---

terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

pensation benefits extend to the employee even if the employee would technically be excluded under the "coming and going" rule. Finally, Lloyd proffers that the "dual purpose" doctrine also applies. Under this doctrine, an employer remains responsible to provide worker's compensation benefits to an employee if the employee made the journey at the direction of the employer, even if the employee received a personal benefit. Thus, if the employee's work creates the necessity for travel and the employee is in the course and scope of employment, even though the employee is serving at the same time a personal purpose of his or her own, worker's compensation coverage still exists.

[¶ 11] In attempting to counter each of these arguments, the State takes a more simplified view. The State argues that § 27–14–102(a)(xi)(D) is unambiguous, making the exceptions asserted by Lloyd inapplicable. In particular, the State asserts that upon the codification of § 27–14–102(a), any "common law" exceptions to the "coming and going" rule were renounced except for those exceptions specifically enumerated within § 27–14–102(a). In making this argument, the State also relies upon the language within Wyo. Stat. Ann. § 27–14–101(b).[2] In addition, the State contends that sufficient evidence existed to support the denial of benefits.

[¶ 12] Given the facts in this case and simple application of § 27–14–102(a)(xi)(D), we conclude that Lloyd must be afforded worker's compensation benefits. Therefore, on this occasion, we neither specifically embrace nor reject the "nexus test," the "special mission" or "special errand" doctrine, or the "dual purpose" doctrine upon which Lloyd relies.

2. Wyo. Stat. Ann. § 27–14–101(b) (LexisNexis 2003) states:

(b) It is the intent of the legislature in creating the Wyoming worker's compensation division that the laws administered by it to provide a worker's benefit system be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the Worker's Compensation Act. It is the specific intent of the legislature that benefit claims cases be de-

[¶ 13] Wyo. Stat. Ann. § 27–14–102(a)(xi)(D) (LexisNexis 2001) (emphasis added) provides:

(a) As used in this act:

. . .

(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and *incurred while at work in places where the employer's business requires an employee's presence* and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:

. . .

(D) Any injury sustained during travel to or from employment *unless the employee is reimbursed for travel expenses* or is transported by a vehicle of the employer[.]

We agree with the State that § 27–14–102(a)(xi)(D) is unambiguous.

[¶ 14] It is undisputed that Lloyd offered to deliver the truck for Sage if the drop-off location could be changed to Frannie because Lloyd needed to retrieve his personal vehicle in Cody. Sage then approved Lloyd's delivery of the truck based on the condition that Lloyd would be able to retrieve his personal vehicle and return to Casper in that vehicle. Thus, Lloyd was required to deliver the truck for his employer, Sage.

[¶ 15] At the time of approval, Lloyd understood that he would be reimbursed for mileage concerning his return trip in his personal vehicle pursuant to established Sage

cided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' benefits legislation shall not apply in these cases. The worker's benefit system in Wyoming is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Accordingly, the legislature declares that the Worker's Compensation Act is not remedial in any sense and is not to be given a broad liberal construction in favor of any party.

policy.[3] Lloyd believed this policy applied to him based, in part, on communications with his supervisor, James Roach, the director of Sage's Casper facility until January 31, 2002. In addition, Mr. Roach testified that Sage's mileage reimbursement policy was in effect during the dates of Lloyd's trip and that he believed that Lloyd's return trip in his personal vehicle qualified for such reimbursement under the policy. Moreover, although Don Washburn had assumed the position of director of Sage's Casper facility on February 1, 2002, Lloyd had no conversations with Washburn concerning the mileage reimbursement policy.

[¶ 16] Following the accident, Lloyd's physical condition did not allow him to submit a request for reimbursement. Mr. Washburn agreed to submit the request for reimbursement. However, following the accident, corporate counsel located in Sage's main office in Pennsylvania decided that Lloyd would not be reimbursed by Sage for the return trip made in his personal vehicle. It is obvious that the denial of benefits for the return trip was solely motivated by Sage's desire to exclude Lloyd from receiving worker's compensation benefits.[4]

[¶ 17] In taking the same position espoused by Sage, the State argues that § 27–14–102(a)(xi)(D) requires that actual reimbursement for mileage be paid before the exception to the "coming and going" rule is applicable. As pointed out by the State, § 27–14–102(a)(xi)(D) provides that no compensable injury shall be deemed to have occurred "unless the employee *is* reimbursed for travel expenses." Thus, the State argues that because Lloyd was not actually reimbursed by Sage, he cannot now be awarded worker's compensation benefits.

[¶ 18] We find the State's argument to be disingenuous. In essence, the State asks this court to allow an employer to manipulate the process through the subsequent denial of mandated reimbursement with the clear intention that such denial would preclude the award of worker's compensation benefits. In this case, Lloyd's transport of the vehicle was directly within his scope of employment and in furtherance of Sage's business purpose. Sage authorized the trip with the express condition that Lloyd would leave the truck at Frannie and collect his personal vehicle in Cody. The evidence presented substantiates that, given this arrangement and Sages' policies, Lloyd had a reasonable expectation that he would be reimbursed travel expenses for his return trip to Casper in his personal vehicle.

[¶ 19] Moreover, the State's argument that Lloyd's employment duties ended when he dropped off Sage's truck in Frannie is unpersuasive. Again, Sage agreed to the arrangement that allowed Lloyd to collect his personal vehicle in Cody and then return to Casper in that vehicle. Had Sage required Lloyd to transfer the truck without allowing Lloyd to return to Casper in his personal vehicle, Sage would have had to arrange and pay for some other transport to return Lloyd. In other words, but for the work assignment, Lloyd would not have made the trip to Frannie requiring his return trip to Casper. Alternatively had Sage not assigned Lloyd to transport its vehicle, other arrangements would have been necessary to accomplish Sage's business venture. Obviously, Sage benefited through its arrangement with Lloyd.[5] Therefore, Sage cannot now be allowed to renege on its arrangement after the fact when it learned that Lloyd was involved in an accident.

[¶ 20] The State also attempts to argue that because Sage believed that Lloyd would be spending the weekend with a friend, Lloyd's trip after dropping off the truck must be categorized as a personal excursion. However, this simply did not occur. Lloyd

---

3. Sage's policy called for the reimbursement of either mileage at $.21 per mile or actual gasoline expenses incurred when an employee used his personal vehicle for business travel.

4. Sage specifically objected to Lloyd receiving worker's compensation benefits based on its position that Lloyd was purely on personal time after delivering the Sage truck to Frannie.

5. Testimony was received that Sage contemplated other potential arrangements in transporting its truck as required. However, because of a one-on-one-student-to-instructor ratio established by Sage policy and the added expense of using multiple instructors and students along with additional Sage or employee personal vehicles, these alternatives were dismissed.

testified that he understood his trip was to be accomplished expeditiously so that he could be back in Casper over the weekend to begin implementing numerous policy changes adopted by Sage's new Casper location leadership. Indeed, Sage often required Lloyd to work over the weekends even though he was not technically scheduled to work these hours. Given this understanding, Lloyd at once collected his personal vehicle after he dropped off Sage's truck, directly returned to the drop-off site to ensure the truck's well-being, and then began his return trip using the same route of travel. Under these facts, Lloyd was clearly within his scope of employment when he had the accident.

[¶ 21] The State also attempts to argue that Lloyd never actually submitted an application for reimbursement of his travel expenses. This argument is specious, given that Lloyd's ·supervisor advised that he would complete the necessary reimbursement documentation for Lloyd because Lloyd was incapacitated. As indicated, before the supervisor filled out such paperwork, he was informed that Sage had already determined that Lloyd would not be paid any reimbursement for his return trip made in his personal vehicle. Additionally, the State's complaint that Lloyd set an unreasonable schedule for his travel is superfluous. As his employer, Sage could have set a schedule for Lloyd's travel, yet failed to do so.

## CONCLUSION

[¶ 22] The district court's order affirming the OAH is reversed, and the matter is remanded to the district court with directions that an order be entered reversing the hearing officer's findings of fact, conclusions of law and order, and that the OAH be directed to enter an order awarding Lloyd benefits consistent with this court's opinion.