2010 WY 3

**Richard J. SHELEST, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–09–0026.

Supreme Court of Wyoming.

Jan. 11, 2010.

Representing Appellant: Donna D. Domonkos, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; John William Renneisen, Deputy Attorney General; James Michael Causey, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]  Richard J. Shelest was injured in a motorcycle accident. At the time, he was an employee of the Wyoming Department of Transportation, and he filed a claim for

worker's compensation benefits. The claim was denied by the Wyoming Workers' Safety and Compensation Division on the basis that Mr. Shelest was not acting within the scope of his employment when he was injured. Mr. Shelest objected, and the matter was referred to the Office of Administrative Hearings, which upheld the Division's determination. Mr. Shelest appealed to the district court, which affirmed the decision. Mr. Shelest now brings his appeal before this Court. We affirm.

## ISSUES

[¶ 2] Mr. Shelest states his two issues this way:

1. Whether the Office of Administrative Hearing's decision denying benefits was supported by substantial evidence.

2. Whether the Office of Administrative Hearing's decision denying benefits was arbitrary and capricious or otherwise not in accordance with law.

## FACTS

[¶ 3] Mr. Shelest was employed by the Department of Transportation in Evanston, Wyoming. On June 20, 2006, his employer required him to attend a training program in Rock Springs. He went with his supervisor and a co-worker, and because it was a nice day, all three decided to ride their motorcycles. They left Evanston at about 7:00 a.m., Mr. Shelest's normal starting time, and the three travelled to Rock Springs on Interstate Highway 80, a distance of approximately 100 miles.

[¶ 4] The training finished around noon. Over lunch, the three discussed taking an alternate route home, one they thought would be more scenic and pleasant. The alternate route they discussed followed Interstate Highway 80 from Rock Springs to Green River, then took Wyoming State Highway 530 to the south and southwest, crossed into Utah on Utah State Highway 43, turned back to the west and northwest into Wyoming on Wyoming State Highway 414, and rejoined Interstate Highway 80 near Mountain View, Wyoming. The alternate route was approximately 150 miles, and took about an hour longer than the direct route. Although the three talked about the alternate route, they did not reach any decision about which route to take.

[¶ 5] The three left for Evanston and approached Green River on Interstate Highway 80. The supervisor was in the lead, the co-worker second, and Mr. Shelest in the rear. The supervisor took the exit for the alternate route, and the co-worker and Mr. Shelest followed. While in Utah, Mr. Shelest lost control of his motorcycle and wrecked. He suffered broken bones and other injuries.

[¶ 6] Mr. Shelest applied for worker's compensation benefits for his injuries. The Division denied the claim on the basis that Mr. Shelest's injuries did not occur while he was acting within the course of his employment. More specifically, it determined that when Mr. Shelest "chose to travel an alternate route into the state of Utah rather than travel directly back to Evanston, [he] stepped out of the course of [his] employment." Mr. Shelest's objection to this determination was the subject of a contested case hearing before the Office of Administrative Hearings. The hearing examiner upheld the Division's determination that Mr. Shelest was not entitled to worker's compensation benefits because he was acting outside the scope of his employment when the accident occurred. Mr. Shelest appealed that decision, first to the district court, and now to this Court.

## STANDARD OF REVIEW

[¶ 7] "When we consider an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision." *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). We review the case as though it had come directly from the administrative agency. *Id.* We review an administrative agency's decision pursuant to the Wyoming Administrative Procedure Act, which provides in pertinent part that the reviewing court shall:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c)(ii) (LexisNexis 2009). We affirm an agency's findings of fact if they are supported by substantial evidence. *Dale,* ¶ 22, 188 P.3d at 561. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Id.,* ¶ 11, 188 P.3d at 558, quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002), quoting *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, 1136 (Wyo.2001). We review an agency's conclusions of law *de novo. Dale,* ¶ 26, 188 P.3d at 561. We employ the arbitrary and capricious standard as a "safety net" against agency action that is contrary to law but not readily correctible under the other applicable standards of review. *See id.,* ¶¶ 23–24, 188 P.3d at 561.

### DISCUSSION

■ [¶ 8] The Wyoming Workers' Compensation Act provides compensation and benefits for work-related injuries, as defined in Wyo. Stat. Ann. § 27–14–102(a)(xi):

"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, *arising out of and in the course of employment* while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

(Emphasis added.) Interpreting this statute, particularly the emphasized language, we have explained that there must be "a causal nexus between the injury and some condition, activity, environment or requirement of the employment." *Quinn v. Securitas Sec. Servs.,* 2007 WY 91, ¶ 11, 158 P.3d 711, 714 (Wyo.2007); *In re Willey,* 571 P.2d 248, 250 (Wyo.1977).

■ [¶ 9] Consistent with the requirement that the injury must arise out of and in the course of employment, the statutes further provide that the term "injury" does not include "[a]ny injury sustained during travel to or from employment unless the employee is reimbursed for travel expenses or is transported by a vehicle of the employer." Wyo. Stat. Ann. § 27–14–102(a)(xi)(D). Under this statutory provision, an injury sustained by an employee while commuting to or from work is generally not compensable. *Willey,* 571 P.2d at 250. An injury sustained by an employee during a trip taken as part of his work, and for which he is reimbursed or eligible for reimbursement, is generally compensable. *See Lloyd v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2004 WY 85, ¶¶ 18, 22, 93 P.3d 1001, 1005–06 (Wyo. 2004).

■ [¶ 10] When an employee is on a work-related trip for which he is reimbursed, but takes a side trip for personal reasons, he is no longer acting within the scope of his employment. *See Boode v. Allied Mutual Ins. Co.,* 458 P.2d 653, 657 (Wyo.1969). Accordingly, when an employee is on a business trip, but sustains an injury during a personal side trip or deviation, he is not entitled to worker's compensation benefits. *See Wyoming State Treasurer ex rel. Workmen's Comp. Dep't v. Boston,* 445 P.2d 548, 549–50 (Wyo.1968). As explained by an often-quoted authority on worker's compensation, "An identifiable deviation from a business trip for personal reasons takes the employee out of the course of employment until the employee returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 17, at 17–1 (2009).

[¶ 11]   In the case before us now, the Office of Administrative Hearings found that Mr. Shelest's injuries were not compensable because they occurred while he was on "a side trip that was an abandonment of the employer's business and a substantial deviation from the work." "Whether an employee's injury occurred in the course of her employment is a question of fact." *Goddard v. Colonel Bozeman's Restaurant*, 914 P.2d 1233, 1236 (Wyo.1996); *Hepp v. State ex rel. Wyoming Workers' Compensation Div.*, 881 P.2d 1076, 1077 (Wyo.1994). Applying the pertinent standard of review, we will uphold the hearing examiner's findings of fact if the record contains substantial evidence to support the findings.

[¶ 12]   The record in Mr. Shelest's case contains substantial evidence to support the hearing examiner's findings. The alternate route was approximately fifty miles longer than the direct route, and took about an hour longer to travel. Mr. Shelest, his supervisor, and his co-worker agreed that there was no business purpose for taking the alternate route. Taking the alternate route rather than the direct route provided no benefit to Mr. Shelest's employer, and to the contrary, kept Mr. Shelest and the others from returning to work for an extra hour. The only reason Mr. Shelest gave for taking the alternate route was the personal one of enjoying the scenery and the pleasant weather. Together, this evidence is sufficient for a reasonable mind to accept as supporting the hearing examiner's decision.

[¶ 13]   Mr. Shelest asserts that the trip did have a business purpose because he was returning to his regular workplace after attending a required training session. In further support of this assertion, he points out that he was paid his normal wage for the day he attended the training, including the time spent travelling to and from the session. He also notes that he was expected to return to work after the training, and that he could have submitted a request for reimbursement of travel expenses. He concedes that his reimbursement would have been limited to the mileage for the most direct route, not the additional mileage of the alternate route.

[¶ 14]   In this argument, Mr. Shelest fails to recognize that a trip can have mixed business and personal purposes, and different purposes at different stages of the journey. In *Standard Oil. Co. v. Smith*, 56 Wyo. 537, 546, 111 P.2d 132, 135 (1941), for example, the employee had been travelling on vacation. While returning home, he picked up supplies for his business. He suffered a fatal accident while hauling the supplies back to his business. We held that his widow was entitled to worker's compensation benefits. His trip was outside the scope of his employment during his vacation, but when he picked up the supplies for work, "he was again within the area of employment" and "acting with the intention of serving the business of the employer." *Id.* Mr. Shelest's situation is the converse. He was initially on a business trip, and acting within the scope of his employment. While returning home, he took an alternate route for personal reasons. Although part of the trip was undisputedly business-related, the evidence supports the hearing examiner's finding that, at the time of the accident, Mr. Shelest was no longer within the scope of his employment, and not acting to serve any business interest of his employer.

[¶ 15]   Mr. Shelest insists that a journey becomes a side trip or deviation only if there is an identifiable, concrete, personal errand to be accomplished. In support of this assertion, he cites *Boode*, 458 P.2d at 655, in which the purpose of the side trip was to inspect and possibly purchase a horse. He also cites *Boston*, 445 P.2d at 549, in which the employees took a side trip to drink beer and play games, and *Lloyd*, ¶ 5, 93 P.3d at 1002, in which the issue was whether a trip to pick up a personal vehicle was a deviation. Based on his interpretation of these cases, Mr. Shelest asserts that the alternate route was not a deviation because he did not take it in order to accomplish any identifiable personal errand.

[¶ 16]   These cases indicate that a specific personal errand makes it more apparent that a trip is a deviation. However, they do not hold that an identifiable personal errand is a requirement in determining that a trip is a deviation. As the hearing examiner found in

Mr. Shelest's case, all of the witnesses "agreed that while they had no person[al] errand or business to be accomplished by taking the alternate route, the sole reason for taking the scenic route was their personal pleasure and there was no benefit to the employer." Enjoying the scenery and weather may not be a specific, identifiable errand, but it is sufficiently personal in nature to support the hearing examiner's finding that Mr. Shelest was acting outside the scope of his employment while travelling the alternate route.

[¶ 17]   In addition, the extent of the deviation should be considered when determining if a business trip has been converted into a personal side trip.  As noted earlier, *Larson's* treatise explains that a small deviation should be disregarded as insubstantial. There is no precise formula to apply in evaluating this factor, but the greater the difference between the alternate route and the direct route, the more likely an alternate route will be deemed a deviation.  The fact finder must apply judgment in assessing the extent of deviation, making this just the sort of question in which the hearing examiner's decision is entitled to deference.  The evidence here indicates, and the hearing examiner found, that the direct route from Rock Springs to Evanston was approximately 100 miles, while the alternate route was about 150 miles and took about an hour longer to travel.  This evidence concerning the extent of the deviation is sufficient to support the hearing examiner's finding that the alternate route was a personal side trip or deviation.

[¶ 18]   Mr. Shelest also contends that the alternate route was not a deviation because it was authorized by his supervisor.  The supervisor's decision to take the alternate route could be considered implicit approval.  It is not clear, however, that the supervisor had the authority to approve the alternate route. In fact, the evidence indicates that the supervisor was reprimanded for taking the alternate route, suggesting that he did not have that authority.  But we do not need to explore the details of the supervisor's actual or apparent authority, because it makes no difference whether the alternate route was authorized or not.  Even if Mr. Shelest had

permission to take the alternate route, the facts remain that he had purely personal reasons for taking the alternate route, that taking the alternate route rather than the direct route was of no benefit and some detriment to his employer, and that the alternate route was a substantial deviation from the direct route.

■   [¶ 19]   As his second issue, Mr. Shelest claims that the hearing examiner's decision is arbitrary and capricious because it is inconsistent.  He points out that the hearing examiner found, on the one hand, that Mr. Shelest had taken a side trip or deviation, but on the other hand, that there was no personal errand to be accomplished by taking the alternate route.  We do not agree that these are inconsistent findings because, as discussed above, it is not necessary to identify a specific personal errand as the purpose of a deviation.  The purpose identified by Mr. Shelest—that of enjoying the scenery and the weather—was purely personal.  As the hearing examiner found, when pursuing that personal purpose, Mr. Shelest was acting outside the scope of his employment. Because the findings are not inconsistent, the decision cannot be considered arbitrary or capricious.

[¶ 20]   Affirmed.

HILL, Justice, dissenting, with whom KITE, Justice, joins.

[¶ 21]   I respectfully dissent because the majority opinion has applied an incorrect standard of review.  I dissent as well because I am convinced that the more enlightened authorities in point, given the totality of the circumstances of this case, hold that merely because a worker uses a longer alternative route to reach a location while traveling either to or from a work location, and absent there being any personal errand, business, visit, etc., which motivated the use of that alternative route, that worker's entitlement to receive worker's compensation benefits, if he/she is injured while traveling that longer alternative route, is not affected.

[¶ 22]   I begin by restating the standard of review.  *Dale v. S & S Builders, LLC,*

2008 WY 84, ¶ 21–22, 188 P.3d 554, 561 (Wyo. 2008), provides:

Section 16–3–114(c)(ii) provides only one evidentiary standard of review. Under the plain language of the statute, reversal of an agency finding or action is required if it is "not supported by substantial evidence." Because contested case hearings under Wyoming's Administrative Procedures Act are formal, trial-type proceedings, use of the substantial evidence standard for review of evidentiary matters is more in keeping with the original intent of the drafters of the administrative procedures act. 33 Fed. Prac. & Proc., Judicial Review §§ 8333, 8334.

Thus, in the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling. When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. *If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.* See, *Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.,* 882 P.2d 858, 860–61 (Wyo.1994); [*Board of Trustees of Laramie County School Dist. No. 1 v.*] *Spiegel,* 549 P.2d [1161] at 1178 [(Wyo.1976)] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Impor-

tantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

The arbitrary and capricious standard remains as a "safety net" to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard. *Newman,* ¶ 23, 49 P.3d at 172. Although we explained the "safety net" application of the arbitrary and capricious standard in *Newman,* we will refine it slightly here to more carefully delineate that it is not meant to apply to true evidentiary questions. Instead, the arbitrary and capricious standard will apply if the hearing examiner refused to admit testimony or documentary exhibits that were clearly admissible or failed to provide appropriate findings of fact or conclusions of law. This listing is demonstrative and not intended as an inclusive catalog of all possible circumstances. *Id.*

There will be times when the arbitrary and capricious standard appears to overlap with some of the other standards. For example, a decision against the great weight of the evidence might properly be called arbitrary or capricious in everyday language. However, the words "arbitrary" and "capricious" must be understood in context as terms of art under the administrative review statute and should not be employed in areas where the more specifically defined standards provide sufficient relief. [Emphasis added.]

[¶ 23] The Division and the hearing examiner determined that Shelest failed to meet his burden of proof and thus we apply this standard of review: "whether there is substantial evidence to support the agency's decision to reject the evidence offered by Shelest by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." I note that this was the standard of review applied by the district court upon review in the district court. The only evidence in the record is the testimony of the

three WYDOT employees involved in the occurrence at hand. After reviewing the record as a whole, I conclude that the overwhelming weight of the evidence establishes that Shelest's choice of a longer alternative route was not so substantial as to disqualify him from the benefits provided by our worker's compensation statutes. Once Shelest established that he was injured in an accident that arose out of and in the course of his work, in a place where the employer's business required his presence, and which subjected him to extrahazardous duties incident to his work, he had met his burden of proof. Here, Shelest's work day consisted of driving to Rock Springs, attending a training session of about three hours duration (ending at lunch time), and then driving back to Evanston to his home base. Because of the accident, Shelest did not make it back to his home base. I consulted 1 *Larson's Workers' Compensation Law,* § 17.06[1] (1999) for the principle that one factor that weighs heavily on the side of non-compensability is the presence of inherent risks in the longer alternative route. Shelest had the choice of returning to Evanston on his motorcycle on I–80, or on the longer, lower speed, less traveled, and "so-called," scenic route. The Division made no effort to prove that the alternate route was inherently more risky than the more direct route. Because Shelest proved he merely was taking an alternate route home (and that route was really the only alternative route available), I am persuaded that the burden shifted to the Division to prove that the alternate route at issue was unreasonable and that it posed an inherent safety hazard that Shelest was obligated to avoid. The Division did not undertake to offer such proof.

[¶ 24] Shelest submitted his claim for benefits to the Division. The Division determined: "The incident, as reported to the Division, does not meet the definition of injury. When you chose to travel an alternate route into the State of Utah rather than directly back to Evanston, you stepped out of the course of your employment (Wyo. Statute 27–14–102(a)(xi))[.]"

[¶ 25] Shelest's employer did not object to the claim he submitted to the Division.

Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2009) provides:

(xi) *"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:*

(A) Any illness or communicable disease unless the risk of contracting the illness or disease is increased by the nature of the employment;

(B) Injury caused by:

(I) The fact the employee is intoxicated or under the influence of a controlled substance, or both, except any prescribed drug taken as directed by an authorized health care provider. The division shall define "intoxicated" and "under the influence of a controlled substance" for purposes of this subparagraph in its rules and regulations; or

(II) The employee's willful intention to injure or kill himself or another.

(C) Injury due solely to the culpable negligence of the injured employee;

(D) *Any injury sustained during travel to or from employment unless the employee is reimbursed for travel expenses or is transported by a vehicle of the employer;* [Emphasis added.]

[¶ 26] Shelest sought a hearing. At that hearing he presented unrebutted evidence that his trip from Evanston to Rock Springs was undertaken while "at work." Specifically, On June 20, 2006, Shelest was traveling from Evanston to Rock Springs to be trained in the use of a new computer program associated with his work as a lead mechanic for WYDOT. Travel by means of use of his personal vehicle (in this case a motorcycle) was authorized by his immediate supervisor/employer. It was also the employer's policy that he was to be reimbursed for his travel expenses, but that policy did not go on

to say that, if you do not submit a voucher for your travel expenses, then you will forfeit worker's compensation coverage. Shelest and another employee traveled from Evanston to Rock Springs, for the training, in the company of their supervisor/employer. They opted to take their motorcycles that day because the weather was nice. The group traveled to Rock Springs on I–80 which is the most direct route between the two cities, a distance of about 101 miles.

[¶ 27] However, on the return trip from Rock Springs to Evanston, the three men decided to take a longer alternative route that was approximately 50 miles longer than the I–80 route. The position argued by the Division at the hearing was that Shelest should be denied an award of benefits because he substantially deviated from a direct route. Evanston is located south-south-west of Rock Springs. The group left their westward travel on I–80 near Green River and traveled south and west along the west side of the Flaming Gorge Recreation Area. As that highway turns westward and northward, it briefly crosses over the Utah border and traverses extreme northern Utah for a few miles before going back into Wyoming. It was in this very area where Shelest lost control of his motorcycle and went off the road, suffering significant physical injuries. Shelest remembered very little about what caused him to have the accident, or his transport from the accident site to a hospital in Utah. Evanston is located just a few miles inside the western boundary of Wyoming with Utah, and about 15 miles north of the Utah border to the south of Evanston. The route taken was really the only alternate route between Rock Springs and Evanston.

[¶ 28] The hearing examiner found that the employer did not have a policy prohibiting the use of personal vehicles in such circumstances as those presented here, and that if a personal vehicle was used, then the employee was entitled to reimbursement for map mileage via the most direct route. The record does not contain a copy of WYDOT's travel policies. However, the testimony of the three WYDOT employees supports the hearing examiner's findings. My perception of that policy is only that direct-route, map-mileage is paid to employees for travel. However, that policy is not encumbered by a concomitant requirement that the most direct route must be used in all instances. SAO Accounting Policies & Procedures, § 61.07 (Mileage) (2006); Wyoming Business Council Travel Policy, D. 3.a. (September 2003); State of Wyoming Executive Department Executive Order, Order 2008–1 (Replaces Executive Order 2007–1) PRIVATE VEHICLE USE REIMBURSEMENT; (this is also the policy followed by the Wyoming Supreme Court). Likewise, WYDOT did not have a specific policy requiring employees to take a particular route or a direct route for business travel. After summarizing the relatively brief and simple facts of this case, the hearing examiner concluded that the use of the longer alternative route did not benefit the employer and that the route was taken solely for Shelest's pleasure. Thus, the hearing examiner concluded, Shelest was not within the course or scope of his employment at the time of the injury.

[¶ 29] My careful review of the record in this case convinces me that Shelest's principal purpose in being on the alternative route was to get back to work in Evanston. If the employer had an objection to the three employees' decisions to take the longer route, then that was readily vindicated by docking their pay by one hour (something the employer did not do), or some other disciplinary action. I see no justification for denying worker's compensation benefits in such circumstances. With respect to "The Long Alternative Route," Larson's treatise on workman's compensation benefits says this:

> Taking a somewhat roundabout route, or being off the shortest line between the origin and destination does not in itself remove the traveler from the course of employment; it must be shown in addition that the deviation was aimed at reaching some specific personal objective....

> If the employee for some reason having nothing to do with a private purpose, but perhaps merely in the exercise of a personal judgment or preference as to the most desirable route, takes a route other than that prescribed by this employer, this should not be considered a deviation....

This type of case, there being no personal deviation involved, should not be treated as a deviation problem at all, but rather as a problem of violation of the employer's instructions, a subject which is examined in detail in a later chapter.

1 *Larson's Workers' Compensation Law,* § 17.05[1], at 17–29 through 17–30 (1999).

[¶ 30] Larson cites a number of cases to support this point and each such case has its individual characteristics. Likewise, many such cases are collected in an annotation and they also turn on their individual facts. W.E. Shipley, Annotation, *Deviation from Employment in Use of Employer's Car during Regular Work Hours,* 51 A.L.R.2d 8, § 16 (Choice of alternative, longer route) (1957 and Later Case Service 2006).

[¶ 31] Given the record on appeal before us, I would also conclude that occurrences, such as the one at hand, must be viewed in light of "scale," the geography of Wyoming, and the differences between I–80 and Wyoming Highway 530, while riding on a motorcycle. Shelest's return route was almost 50% longer, or about 50 miles, or about one hour, depending upon how it is quantified. If this had been a case about blocks, then an alternate route which extended six blocks to nine blocks would operate to deprive a worker from worker's compensation benefits. Likewise, if a "direct" route was extended from 20 minutes to 30 minutes that could serve to deprive the worker of worker's compensation benefits. Perhaps WYDOT, as well as all other employers, want to institute internal rules to the effect that the most direct route must be taken, unless there is a documented and acceptable reason for the deviation. For example, from Cheyenne there are three or more competing routes to Jackson. An employee might choose one over the other because of weather, highway construction delays, traffic patterns, etc., but it would be a deviation unless documentation was kept by each and every employee. I cannot accept that as good policy, or a rational construction of the governing law in the field of worker's compensation jurisprudence. The route Shelest took was the only alternate route available, and I do not think he should have to forfeit his right to worker's compensation benefits for having taken it. Moreover, this is Wyoming and our geography of distances and terrain features often commands a conclusion that distances which might seem unreasonable in those jurisdictions/states so small that they readily could fit into either Uinta or Sweetwater Counties, cannot be considered unreasonable here.

[¶ 32] I conclude that the record does not support the Division's decision to reject the evidence offered by Shelest, and that the overwhelming weight of the evidence in the record as a whole does not support the hearing examiner's approval of the Division's denial of benefits. Therefore, I would reverse the order of the district court which affirmed the order of the hearing examiner, with directions that the district court reverse the order of the hearing examiner with further direction that the hearing examiner remand this case to the Division with directions that Shelest be awarded the benefits to which he is entitled.