In the Matter of Injury to James WILLEY, an employee of H. K. Ferguson Company.

H. K. FERGUSON COMPANY, Appellant (Employer),

v.

James WILLEY, Appellee (Employee).

In the Matter of Injury to Curtis KRAMER, an employee of H. K. Ferguson Company.

H. K. FERGUSON COMPANY, Appellant (Employer),

v.

Curtis KRAMER, Appellee (Employee).

Nos. 4798, 4799.

Supreme Court of Wyoming.

Nov. 15, 1977.

Dan R. Price II, Morgan & Brorby, Gillette, for appellant.

Cecil A. Cundy, Watt, Geer & Empfield, Gillette, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Willey was injured and Kramer was killed in a motor vehicle accident which occurred while they were en route to the site of their employment, a coal mine located in open country some fifty miles southeast of Gillette, Wyoming. Claims for worker's compensation were filed and approved by the district court. We are called on to determine whether these injuries arose out of and in the course of employment. We conclude that they did and will, therefore, affirm the judgment of the trial court.

The facts of this case are, for the most part, not in dispute. The appellees received their injuries as a result of a head-on collision with a large truck, which occurred about six miles from the appellees' place of employment, while they were commuting in a car-pool to the jobsite from their residences in Gillette. As a result of a union contract, Willey and Kramer received $12.00 per day, in addition to their normal wages, which they used to defray transportation costs for traveling to and from work. This money, also referred to as subsistence at the hearing on this matter, was paid if the employee reported for work, regardless of the distance he had to travel. The dollar-figure was based upon the distance between the jobsite and the local hiring hall in Casper and not from the employee's residence. In this case, the jobsite was more than fifty miles from Casper and, therefore, $12.00 was paid. The employer placed no restrictions on, and exercised no control over, its employees' mode of travel or place of residence. In the instant case, Willey did not own an automobile and, therefore, commuted in Kramer's car to the jobsite, and, in return for his transportation, Willey paid half of Kramer's travel expenses.

Before reaching the primary issue presented by this appeal, we will address ourselves to appellant's contention that the injuries complained of do not fall within the definition of "injury" contained in § 27–311(n), W.S.1957, 1975 Cum.Supp. This provision provides, in pertinent part, that

" 'Injury' means any harmful change in the human organism . . . *arising out of and in the course of employment while at work* in or about the premises occupied, used or controlled by the employer, incurred *while at work* in places where the employer's business requires an employee's presence and which subjects the employee to extra hazardous duties incident to the business. . . ." [Emphasis supplied]

Appellant would have us construe this definition as imposing four *separate* requirements which must be met before an injury is considered compensable:

    1.  That the injury arise out of and in the course of employment, *and*

    2.  That the injury occur while the employee is at work in or about the premises of the employer, *and*

    3.  That the injury be incurred while the employee is at work in places where the employee's presence is required by the employer's business, *and*

    4.  That the work subject the employee to extrahazardous duties incident to the business.

We decline the invitation to make such a construction.

In *In re Jensen*, 63 Wyo. 88, 178 P.2d 897, we were called upon to construe the meaning of § 124–106–7(1), W.R.S.1931, a predecessor to § 27–311(n), supra, which provided:

> "The words 'injuries sustained in extrahazardous employment,' as used in this chapter shall include death resulting from injury, and injuries to employes, as a result of their employment and *while at work in or about the premises* occupied, used or controlled by the employer, *and injuries occurring elsewhere while at work* in places where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business, *but shall not include injuries of the employe occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence;*" [Emphasis supplied]

In doing so, we made the following pertinent comments:

> " . . . Just here we may recall that the language 'while at work' appearing in subdivision (1) of section 24–106–7, W.R.S.1931 hereinbefore quoted has been decided to be synonymous in meaning with the phrase 'in the course of [his] employment'. It was so held, and it would seem correctly, by the Supreme Court of New Mexico in *McKinney v. Dorlac*, 48 N.M. 149, 146 P.2d 867 construing the statute of that state which as before noted so closely resembles our subdivision (1) aforesaid." 178 P.2d at 908.

Although the language contained in § 27–311(n), supra, is somewhat different from that contained in its predecessor, the meaning has remained the same. The provision acknowledges that injuries may occur on *or* off the premises of the employer. In either case, the injury is compensable if it arises out of and in the course of employment. This requirement emphasizes the need for a causal connection between the injury and the employment. Such a causal connection is supplied when there is a nexus between the injury and some condition, activity, environment or requirement of the employment. *Parrott v. Industrial Commission of Ohio*, 145 Ohio St. 66, 60 N.E.2d 660. See, *Standard Oil Co. v. Smith*, 56 Wyo. 537, 111 P.2d 132; *In re Jensen*, supra; *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Boston*, Wyo., 445 P.2d 548. Cf., *White Ditching Company v. Giddeon*, Wyo., 413 P.2d 45. It is this requirement, and only this requirement, which is envisioned by the language contained in § 27–311(n), supra.

This court subscribes to the almost universal rule that generally injuries sustained by an employee who is "going to or coming from" the duties of his employment are not covered by worker's compensation. *In re Jensen*, supra. In fact, this rule was a part of the statutory definition of "injury" until the recodification of the worker's compensation laws in 1975. Chapter 149, § 1, Session Laws of Wyoming 1975. An exception to the rule, which is particularly applicable to the instant case, was also recognized in *Jensen* where we said:

> " . . . [W]hen other circumstances are injected such as where the employer himself as a part of the employment arrangement supplies transportation to and from the place where the duties of the employee actually commence, an exception to the general rule arises and a different result ensues." 178 P.2d at 900.

In *In re Jensen* we approved the application of this exception to injuries sustained in a motor vehicle accident by employees who drove their own cars to and from an oil-well site and were reimbursed by the employer on a mileage basis for the distance driven. The facts relied on in *Jensen,* and the conclusions reached therein, are worthy of repetition:

> "When we keep in mind that the oil well where the claimant and the rest of the drilling crew worked was at a place where no arrangements for their accommodation had been made and approximately 50 miles from the place where they resided; that carriage by automobile was the only practical means of getting to and from the work at the well site; that the employer paid that member of the crew—in this instance, the driller, Long, who hired claimant and his fellow crew members—who used his car to transport the remaining members of the crew to and from their homes; that both the company and these employees contemplated that free carriage to and from their homes was to be furnished them; that the consideration for the employer's agreement to furnish this transportation was, in part at least, based on the performance of work for the company by the claimant at the oil well for 'they didn't receive transportation unless they worked tower'; that under the unusual war condition which prevailed in this state at that time, the arrangement and practice adopted was for the mutual advantage of both the employer and employees; and finally that whoever drove a car for which service he was paid by the company on a mileage basis as before stated, became as a matter of fact that day, the agent of the employer in furnishing the promised transportation, thereby establishing the vehicle in some measure within the control of the employer, we are constrained to conclude that the company supplied claimant with free transportation to and from his home as an incident of the contract of employment. As we have seen, the treasurer of the company admitted that 'these men really got their transportation in addition to their wages'. In consequence of this arrangement and the detailed facts above set forth, we also conclude that under the great weight of authority as we find it, the injuries suffered by claimant through the accident in question should be regarded as compensable under the Workmen's Compensation Act of this state. We are not unmindful that a few courts have taken a strict and as we think too narrow a view of the phrase 'in the course of employment' but having regard to the purpose of the law and the liberal construction thereof which we have consistently followed for many years and which the legislature of the state has never disapproved, we are not inclined to adopt such a view at this late date." 178 P.2d at 907.

In the instant case, the trial court found "that the employee was receiving daily compensation, separate from his wages, which was used by him for transportation to and from work." Appellant contends that this finding was erroneous, and asserts that the extra money paid was merely added compensation which bore no relation to actual travel expenses, citing *Watkins v. Cowenhoven,* 90 N.J.Super. 17, 216 A.2d 15, and *Tavel v. Bechtel Corporation,* 242 Md. 299, 219 A.2d 43. These cases, and others cited by appellant, rest on a factual determination as to whether or not travel expenses were paid as a result of a contractual obligation of the employer. Although reaching a different result, based on the particular facts of the case, the Arizona Court of Appeals, in *Kerr v. Industrial Commission,* 23 Ariz.App. 106, 530 P.2d 1139, 1141, stated the problem and solution as follows:

> " . . . Payment of a per diem allowance for travel may evidence an intention to include travel time as part of the course of employment. *Serrano v. Industrial Commission,* 75 Ariz. 326, 256 P.2d 709 (1953); 1 Larson, § 16.09 at 4–86. However, determining whether the per diem was a subsidy for travel or merely a different form of compensation is a fact question for the Commission to

resolve, and the conclusions drawn will not be set aside unless there is no reasonable basis for the determination. *Valerio v. Industrial Commission*, 85 Ariz. 189, 334 P.2d 768 (1959); *Sloan v. Industrial Commission*, 14 Ariz.App. 354, 483 P.2d 586 (1971)."

We must ask, then, whether there was a reasonable basis for the trial court's determination. The record discloses that Willey was told by the union that the $12.00 per day was only for "upkeep of the car and for gas, anything your car needed." The Safety Superintendent for H. K. Ferguson, Robert Williamson, testified that the travel pay or travel subsistence was paid where the worksite was remote from the union hiring hall, which, in this case, was in Casper. Dominic Conte, Project Business Manager for appellant, stated that the $12.00 payment was based on the mileage chart contained in the local union agreement, even though appellant was not a signatory to that agreement. Since the distance to the jobsite was over fifty miles from Casper, $12.00 per day was called for by this agreement. The record further discloses that although the distances traveled may vary due to the variety of residence locations chosen by employees, substantial travel was necessary regardless of the employee's residence. While it may be conceded that the record is not as clear as it could be with respect to the characterization of the $12.00-per-day payment, since we do not have the actual union contract before us, we hold, nonetheless, that the record is sufficient for us to reach the conclusion that at least a portion of the payment was intended to defray travel expenses. See *Hubbell v. Motif, Inc.*, 33 A.D.2d 854, 305 N.Y.S.2d 845; *Fisher v. Otis Elevator Company*, 28 A.D.2d 598, 279 N.Y.S.2d 769, aff'd 22 N.Y.2d 665, 291 N.Y.S.2d 361, 238 N.E.2d 750. Cf., *Clark v. H. K. Ferguson Co.*, 283 A.D. 756, 128 N.Y.S.2d 71 (where facts disclosed that a subsistence payment did not include a travel allowance); *Ricciardi v. Aniero Concrete Company, Inc.*, 64 N.J. 60, 312 A.2d 139; *Nelson v. Harding*, 29 Colo.App. 76, 480 P.2d 851; *Zenith National Ins. Co. v. Workmen's Compensation Appeals Board*, 59 Cal.Rptr. 622, 428 P.2d 606; *Williams v. Brunswick County Board of Education*, 1 N.C.App. 89, 160 S.E.2d 102; and *Reneau v. Bales Electric Co.*, Mo., 303 S.W.2d 75.

■ Finally, appellant contends that compensation would be improper in this case since the employer exercised no control over the employees off the jobsite. In *In re Jensen, supra*, we quoted with approval from the case of *Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028, as follows:

> " 'Each employment relationship must be perused to discover whether the employer, by express agreement or by a course of dealing, contracted to and did furnish this type of transportation. For that reason it was error for the Court of Appeals in this case to emphasize that the employer must have control over the acts and movements of the employee during the transportation before it can be said that an injury arose out of and in the course of employment. The presence or absence of control is certainly a factor to be considered. But it is not decisive. An employer may in fact furnish transportation for his employees without actually controlling them during the course of the journey or at the time and place where the injury occurs. *Ward v. Cardillo*, supra (77 U.S.App.D.C. 343, 135 F.2d 260, 262). And in situations where the journey is in other respects incidental to the employment, the absence of control by the employer has not been held to preclude a finding that an injury arose out of and in the course of employment. See *Cudahy Packing Co. v. Parramore*, (263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366) supra; *Voehl v. Indemnity Ins. Co.*, supra, (288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245).

> \* \* \* \* \* \*

> " . . . 'Where there is that obligation, it becomes irrelevant in this setting whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a

common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use. In other words, where the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed. From the statutory standpoint, the employer is free to carry out its transportation obligation in any way the parties desire; and the rights of the employees to compensation are unaffected by the choice made.'" 178 P.2d at 909–910. Once the injured employee falls within the travel-expense exception to the general

"going to and coming from" rule, the question of control becomes relatively unimportant. This is the situation presented in the instant case.

We need not reach the other exceptions to the general rule of no compensation, since we find that the trial court's determination can be sustained under the travel-expense exception.

Affirmed.