2012 WY 141

**In the Matter of the Worker's Compensation Claim of Gordon R. BILYEU, an Employee of Babcock & Wilcox Construction, Appellant (Petitioner),**

v.

**The STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–12–0051.

Supreme Court of Wyoming.

Nov. 2, 2012.

Representing Appellant: Andrew F. Sears of Murane & Bostwick, LLC, Casper, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN *, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] Gordon R. Bilyeu was injured in an accident while driving his motorcycle to work. He filed a claim for worker's compensation benefits asserting that his injuries were covered because he sustained them while traveling to work and his employer reimbursed him for travel expenses. The Wyoming Worker's Compensation Division (the Division) denied his claim. After a contested case hearing, the Office of Administrative Hearings (the OAH) also denied his claim. Mr. Bilyeu sought review of the OAH ruling in district court, which affirmed the denial. He now appeals to this court claiming the OAH's decision is contrary to the evidence because it ignored evidence showing that his employer reimbursed him for travel expenses. We affirm.

## ISSUE

[¶ 2] The issue for this Court's determination is whether the OAH's conclusion that Mr. Bilyeu failed to meet his burden of proving he was reimbursed for travel expenses within the meaning of Wyo. Stat. Ann. § 27–14–102(a)(xi)(D) (LexisNexis 2011) was con-

trary to the overwhelming weight of the evidence.

## FACTS

[¶ 3] Mr. Bilyeu worked as a boilermaker for Babcock & Wilcox Construction for thirty years. In June of 2010, he was working at Dry Fork Station Power Plant (Dry Fork) near Gillette, Wyoming. His home address was in Texas, but he was living at the time in Gillette in order to work at Dry Fork. He was driving his motorcycle to work from his home in Gillette on June 28, 2010, when he was involved in an accident. He sustained a broken ankle, broken ribs, a broken collar bone, a collapsed lung, and lacerations.

[¶ 4] Mr. Bilyeu filed a claim for worker's compensation benefits asserting that his injuries were covered because he was "reimbursed for travel expenses" as provided in § 27–14–102(a)(xi)(D). That section states:

§ 27–14–102. **Definitions.**

(a) As used in this act:

. . . .

(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. *"Injury" does not include:*

. . .

*(D) Any injury sustained during travel to or from employment unless the employee is reimbursed for travel expenses or is transported by a vehicle of the employer;*

(Emphasis added.)

[¶ 5] At the contested case hearing, Mr. Bilyeu presented evidence that he received per diem of $60 per day while working on the Dry Fork project. Citing *In re Van Matre*, 657 P.2d 815 (Wyo.1983), the OAH concluded Mr. Bilyeu did not meet his burden of prov-

* Justice Golden retired effective September 30, 2012.

ing that the $60 per diem was intended to reimburse him for his travel expenses. The OAH concluded the evidence showed instead that the per diem was tied to the number of hours Mr. Bilyeu worked, was intended as additional compensation negotiated by Mr. Bilyeu's union and had no relationship to actual travel expenses. On that basis, the OAH concluded the per diem did not constitute reimbursement for travel expenses and Mr. Bilyeu's injuries were not covered.

[¶ 6] Mr. Bilyeu filed a petition for review of the OAH order in district court. After hearing argument, the district court agreed that the evidence did not show the per diem was intended to reimburse Mr. Bilyeu for travel expenses and affirmed the OAH ruling. Mr. Bilyeu appealed to this Court, claiming the ruling is contrary to the evidence.

## STANDARD OF REVIEW

■ [¶ 7] The OAH concluded Mr. Bilyeu did not meet his burden of proving that he was reimbursed for his travel expenses. When an agency concludes a claimant failed to meet his burden of proof, our task is to decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *Davenport v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2012 WY 6, ¶ 12, 268 P.3d 1038, 1041–42 (Wyo.2012).

## DISCUSSION

■ [¶ 8] As reflected in paragraph 4 above, § 27–14–102(a)(xi)(D) provides that an injury sustained by an employee while traveling to or from work is not compensable under the Worker's Compensation Act unless the employee is reimbursed for travel expenses or is transported by a vehicle of the employer. We have said that this provision "constitutes a legislative determination that, while no compensable nexus with the employment is generally present when an employee is traveling between home and work, such a nexus is created where the employer has assumed the cost of that travel." *Berg v. State ex rel. Wyoming Workers' Safety &*

*Comp. Div.*, 2005 WY 23, ¶ 8, 106 P.3d 867, 871 (Wyo.2005), quoting *Archuleta v. Carbon County School District No. 1*, 787 P.2d 91, 92 (Wyo.1990). Thus, the question in this case was whether Mr. Bilyeu's employer assumed the cost of travel between his home and work. The OAH concluded Mr. Bilyeu did not meet his burden of proving that nexus. We consider whether the OAH's conclusion is contrary to the overwhelming weight of the evidence.

[¶ 9] The union contract applicable to Mr. Bilyeu's employment at Dry Fork stated in relevant part as follows:

### ARTICLE 16—TRAVEL AND SUBSISTENCE

A per diem allowance shall apply on the Project, as outlined in Appendix A. This per diem allowance does not include pay for travel time or mileage.

### ARTICLE 17—GENERAL WORKING CONDITIONS

Section 17–1. Employment begins and ends at the Project site.

\* \* \* \*

### *Appendix A*

. . . .

A–4 Per Diem Allowance

A–4.1 Per diem allowance will be based on mileage from the employee home address to the Dry Fork Station site.

A–4.2 Per diem allowance for the time period July 1, 2009, shall be paid as follows:

0 to 20 miles—$10.00 per day worked

Over 20 miles to 50 miles—$30.00 per day worked

Over 50 miles—$60.00 per day worked.

A–4.3 Holidays, rain, breakdowns, or any reason the employees are stopped by the Employer from working will be considered days worked and per diem paid. Employees absent from work shall not be paid per diem for the day absent.

A–4.4 An employee must work the scheduled work day before or the scheduled

work day following a holiday that occurs Monday through Friday, to be entitled to per diem for the holiday, unless excused. A–4.5 Employees who leave the job before the end of the shift except for reasons beyond their control, such as illness in family, court summons, bona fide illness, etc. shall be paid per diem for the time actually worked unless they get permission of designated Employer's representative. A–4.6 Per diem allowances shall be in effect at the start of construction and will be reviewed by the DFS–WCA Committee on an annual basis starting in 2008, with the annual review being completed by July 1 of the review year. Any adjustments to the per diem allowance shall be incorporated as an Amendment per Article 21.

[¶ 10] Mr. Bilyeu testified that at the time of his injuries he was receiving per diem in the amount of $60 per day because his home address in Texas was more than 50 miles from Dry Fork. He testified the $60 per day was for travel, meals and other expenses associated with getting to and from the work site. To refute Mr. Bilyeu's testimony, the Division called the project manager for Dry Fork who testified the per diem paid to employees on the project was an allowance for living expenses and did not include any pay for travel time or mileage. The project manager acknowledged, however, that per diem was based on mileage from the employee's home address, which in Mr. Bilyeu's case was an address in Texas.

[¶ 11] From this evidence, it is not clear whether Mr. Bilyeu was "reimbursed for travel expenses" within the meaning of § 27–14–102(a)(xi)(D). On the one hand, the contract states the per diem does not include pay for travel time or mileage; on the other hand, it states the per diem is based on mileage. While Mr. Bilyeu understood the per diem was compensation for expenses he incurred in getting to and from work, the project manager said it was intended for living expenses and, although based on mileage, did not include pay for travel time or mileage. The most that can be said of this evidence is that it did not overwhelmingly support the position of either Mr. Bilyeu or the Division.

[¶ 12] To reiterate that said in paragraph 7 above and this Court's precedent, our task is to determine whether the OAH's decision to reject Mr. Bilyeu's evidence was contrary to the overwhelming weight of the evidence in the record as a whole. Applying this standard, we cannot say that it was. The evidence presented did not overwhelmingly support either party's position; therefore, the OAH's decision to reject Mr. Bilyeu's evidence was not contrary to the overwhelming weight of the evidence.

[¶ 13] Asserting otherwise, Mr. Bilyeu contends the OAH completely ignored the contract language basing per diem on the number of miles between an employee's home address and the worksite. He argues that a daily subsistence pay based entirely upon a sliding mileage scale is, at least partially, compensation for travel. Irrespective of the language attempting to make it otherwise, Mr. Bilyeu contends the contract language tying per diem to mileage shows it was partly compensation for travel and no other conclusion is reasonable.

[¶ 14] By itself, the language in Appendix A of the contract basing per diem on mileage between an employee's home address and the work site could be interpreted to mean the per diem was related to travel. However, when read together with Article 16, which expressly states per diem does not include pay for travel time or mileage, we cannot conclude the OAH's ruling was contrary to the overwhelming weight of the evidence.

[¶ 15] Mr. Bilyeu also asserts the OAH ignored *In re Willey*, 571 P.2d 248 (Wyo. 1977), in which this Court held the claimants were entitled to benefits under circumstances similar to those in the instant case. There, one employee was killed and another was injured in a head-on collision as they were car-pooling from their residences to the jobsite. *Id.* at 249. The evidence showed that in addition to their normal wages, employees received $12 per day pursuant to a union contract, which they used to defray expenses for traveling to and from work. *Id.* The $12 was based upon the distance between the job site and the local union hiring hall. *Id.* Employees received $12 if they reported to

work, regardless of the distance they traveled. *Id.*

[¶ 16] Finding that the employees received daily compensation separate from wages which they used for transportation to and from work, the district court awarded benefits. The employer appealed, claiming the $12 was unrelated to actual travel expenses. This Court rejected the employer's contention and affirmed the award. While noting that the record "is not as clear as it could be" concerning the $12 per day payment, the Court found the evidence sufficient to support the conclusion that "at least a portion of the payment was intended to defray travel expenses." *Id.* at 252.

[¶ 17] In reaching this result, the Court pointed to evidence showing that Willey had been expressly told the $12 per day was for vehicle maintenance and gas. *Id.* Also, upper level employees testified the extra pay was due when the worksite was remote from the hiring hall and was based on the mileage chart contained in the union contract. Additionally, the evidence showed that substantial travel was necessary to reach the work site regardless of where a particular employee lived.

[¶ 18] In *Willey,* the Court noted that it did not have the actual contract before it; it did not, therefore, have the benefit of contract language expressly addressing the additional pay. In contrast, the evidence here included a contract expressly stating per diem did not include pay for travel time or mileage. Additionally in *Willey,* evidence was presented showing the employees were expressly told the payment was for "upkeep of the car and for gas, anything your car needed" and the employees actually used the $12 per day to defray the expense of traveling from home to work. *Id.* at 252. In the present case, no evidence was presented showing that Mr. Bilyeu actually used the $60 payment for gas or vehicle maintenance or that anyone told him that was what the payment was for. While he stated in his affidavit that "his employer agreed to pay $60 per day for travel, meals and other expenses" and that the amount identified as "subpay" on his pay stubs was to reimburse him for travel expense, he did not say from where or from whom he acquired that information. Given these distinctions, we do not find *Willey* controlling in the present case.

[¶ 19] Mr. Bilyeu also cites *Lloyd v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2004 WY 85, ¶ 16, 93 P.3d 1001, 1005 (Wyo.2004) in which this Court reversed a denial of benefits to an employee who was injured in an accident as he was returning home in his own vehicle after delivering his employer's truck to an agreed upon destination. There, the evidence showed the employer authorized the trip with the express condition that after delivering the truck the employee would retrieve his vehicle for the return trip home. The evidence also showed the employer had a policy of reimbursing employees for using their personal vehicles for business travel either by paying mileage at $.21 per mile or reimbursing the actual cost of gasoline, and the employee understood he would be reimbursed in accordance with that policy. We declined to countenance the employer's after-the-fact effort to avoid reimbursement in contravention of its own policy and the conditions on which it authorized the trip.

[¶ 20] Mr. Bilyeu's reliance on *Lloyd* is misplaced. There, the evidence clearly showed that it was only after the accident and the employee's request for reimbursement that the employer decided to depart from established policy and the conditions on which the trip was authorized and deny benefits to which the employee was clearly entitled. Here, the policy stating that per diem did not include pay for travel time or mileage was clearly in place prior to the accident.

[¶ 21] The OAH's conclusion that Mr. Bilyeu did not meet his burden of proving his employer reimbursed him for travel expenses was not contrary to the overwhelming weight of the evidence.

[¶ 22] Affirmed.

KITE, C.J., delivers the opinion of the Court; VOIGT, J., files a specially concurring opinion.

VOIGT, Justice, specially concurring.

[¶ 23]   I agree with the rationale and result of the majority opinion. I write separately to make a seemingly minor point in regard to the standard of review. The second sentence of ¶ 7 of the majority opinion reads as follows:

> When an agency concludes a claimant failed to meet his burden of proof, our task is to decide whether there is substantial evidence to support the agency's decision *to reject the evidence offered by the burdened party* by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

(Emphasis added.)   I believe the highlighted portion of the sentence should be deleted. It is not necessary for the agency to reject the burdened party's evidence for the agency to rule against the burdened party. The agency may accept every bit of the burdened party's evidence, yet still decide that the evidence does not meet the burden of proof.